## JANE GALLAGHER *vs.* HATHAWAY MANUFACTURING CORPORATION.

Bristol.     October 25, 1898. — November 23, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Master and Servant — Agreement — Fine — Statute — Action — Pleading.*

An agreement, by the terms of which a weaver in a cotton mill is to be paid a certain sum for weaving a described cut of cloth of the first quality and half the amount for a cut of the second quality, the quality to be determined by the superintendent of the mill, is to be taken to refer only to a difference of quality for which the weaver is responsible, and is sufficiently certain to satisfy St. 1894, c. 508, § 55.

An agreement is express none the less that it is expressed by conduct, and not by words.

The deduction by a manufacturing corporation, under an agreement between it and a weaver in its employ, as a fine under St. 1894, c. 508, from his weekly wages of a sum for imperfection in his work of the previous week for which he was paid the full price as for work of the first quality, is not a violation of § 51, as to the weekly payment of wages by such a corporation to its employees; and if he sues for the amount so deducted, the corporation is entitled to judgment under a general denial, or to recover in set-off.

CONTRACT, to recover a balance due for wages. The defendant answered with a general denial, and also filed a declaration in set-off. After the former decision, reported 169 Mass. 578, the case was tried in the Superior Court, without a jury, before *Blodgett*, J., who found for the defendant; and the plaintiff appealed to this court, and also alleged exceptions. The facts appear in the opinion.

*J. W. Cummings*, (*E. Higginson & C. R. Cummings* with him,) for the plaintiff.

*O. Prescott, Jr.*, for the defendant.

HOLMES, J.     In this case, since it was before the court upon an agreed statement of facts, 169 Mass. 578, there has been a trial, and the judge has found that the plaintiff contracted to work for the defendant upon the terms of a written notice by which the plaintiff was to be paid a certain sum for weaving a described " cut " of cloth of the first quality and half the amount for a cut of the second quality, the quality to be determined by the defendant's superintendent.     The plaintiff wove a cut which

was of the second quality, and which was determined to be so by the superintendent. The difference in the pay was deducted from her next week's wages, and she brings this suit to recover the amount. The judge who tried the case found for the defendant, subject to the facts stated by him, and the plaintiff excepted and appealed.

Both parties intended to produce only work of the first quality, and it is found that the difference of amount in the stipulated payments was a fine. It is found that this difference was commonly known as a fine, and that the plaintiff understood the agreement, although she did not know what defects would constitute second quality work, and therefore we feel bound to assume, against a part of the argument for the plaintiff, that her contract was an agreement upon the amount of the fine within St. 1894, c. 508, § 55, subject only to the question whether the amount was fixed definitely enough to satisfy the act.

It is suggested, but is not much pressed, that the agreement covers cases where the cloth is of second quality because of the poor quality of the yarn, or other cause not an imperfection in the weaver's own work, to which last fines are limited by the section cited. But we think that the agreement must be construed with the law, and taken to refer only to a difference of quality for which the plaintiff was responsible.

The more serious objection is that the standard of first and second quality might not be constant, that it is determined by the market, and that the result is the same to the weaver whether the fine is left in terms to vary, or is kept nominally the same but is imposed by a measure which varies from time to time. It is a well known device of dealers who do not want to say they change the price of a liquid to change the size of the receptacle, while keeping the old name of quart, pint, or glass. But it is not argued that the superintendent may determine the quality arbitrarily. Both sides agree that his determination must be reasonable. The plaintiff puts this part of her case on the oscillations of the market, and the changes in grading which may be necessary in order to get customers. Taking the argument as thus limited, we cannot say that the agreement is not reasonably certain. The very section relied on seems to contemplate a fine as determined by " the system of grading their work . . . used

by manufacturers." No mode of determination can give a change-less result. All things change, the dollar as well as others. If we accept the principle of the plaintiff's argument, it still is a question of degree whether the certainty is sufficient. We should suppose, and, so far as anything goes which is disclosed, we must assume, on the finding for the defendant, that the difference between the first and second quality of a given kind of cloth in a given market would be a tolerably permanent as well as certain criterion. Whether the plaintiff knew in what the difference consisted is immaterial, so long as the superintendent in judging was bound to refer to external standards, and could not decide by his own whim. It is not argued that the fine must be agreed on separately in each particular case. The language of the statute implies, in accordance with good sense, that the agreement should precede the imposition of the fine. If so, it naturally would be a general agreement in advance.

At the end of the week when the work in question was done, the plaintiff received full pay as for first class work, and the sum in question was deducted from the next week's wages. This was due to the impossibility of the superintendent's personally examining all the work during the week, and was in accordance with previous practice between the plaintiff and the defendant. The court found that the plaintiff, by implication, agreed that the first payment was provisional, and that such overpayment as this might be withheld the next week. It is urged that if the plaintiff could make such an agreement, at least it should have been expressed. The agreement found by the court is express none the less that it was expressed by conduct and not by words. It was not implied in the sense that it was a legal fiction, such as often has been set up in order to bring a cause of action within the sphere of assumpsit or debt. Apart from statute it does not matter what mode of expression is used, and there is no statute about it.

It is argued also that such an agreement, however made, is contrary to St. 1894, c. 508, § 51, requiring manufacturing corporations and some others to "pay weekly each employee engaged in its business the wages earned by such employee to within six days of the date of such payment." We do not perceive how. The plaintiff has been paid all that is due to her.

She was overpaid one week, and was bound to repay the amount. We see nothing to prevent her agreeing that such an overpayment should go into a mutual account for the next week and reduce the sum due. It surely would not encounter either the words or spirit of the law if an employer should lend his workmen money to be set against his next week's wages. If the fine was lawful, as we have decided that it was, the payment of it might be arranged for in the same way.

As the fine went into a mutual account, ordinarily the claim could be proved under a general denial, as the plaintiff's real cause of action, if any, was only for the balance. The difference between a mutual account and a statutory set-off has been pointed out heretofore. *Goldthwait* v. *Day*, 149 Mass. 185, 187. *Dewing* v. *Dewing*, 165 Mass. 230, 231. The only objection which can be urged to the application of this principle to the present case is that at the time of the deduction the superintendent in person had not passed upon the plaintiff's work. It might be urged by an extreme technicality that, although in fact there had been an overpayment which the plaintiff would be bound to refund, and which she had agreed to have charged against her wages, yet the moment for bringing it into the account did not arise until the superintendent had given his judgment. This would be a very technical and strict application of the law in a case like this, where the examination by the superintendent was delayed only because, when his agent pointed out the defects to the plaintiff, she said nothing, and made no complaint until the amount of the fine was withheld. But it is unnecessary to pass upon the point, since it is enough to say that, if the judge was not warranted in finding for the defendant irrespective of the declaration in set-off, then the defendant was entitled to recover in set-off, and one way or the other is entitled to judgment.

*Exceptions overruled, and appeal dismissed.*