**INTERSTATE SECURITIES CO. v. UNITED STATES.**

No. 3145.

Circuit Court of Appeals, Tenth Circuit.

Sept. 25, 1945.

C. A. Warren, of Tulsa, Okl. (Hugh Ownby, of Tulsa, Okl., on the brief), for appellant.

Whit Y. Mauzy, U. S. Atty., of Tulsa, Okl. (Wm. Knight Powers, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and MURRAH, Circuit Judges, and RICE, District Judge.

MURRAH, Circuit Judge.

The United States brought this action under 27 U.S.C.A. § 224, for the forfeiture of a 1942 Ford automobile owned by James R. Leach and upon which the claimant, Interstate Securities Company, held a chattel mortgage. Leach defaulted, but the claimant sought remission of the forfeiture under 18 U.S.C.A. § 646.[1] The trial court found that Leach had used the automobile involved to transport intoxicating liquor from the State of Missouri into the State of Oklahoma; that Leach had a reputation with members of the Tulsa Police Department for dealing in intoxicating liquors and the Alcohol Tax Unit at Tulsa, and denied remission or mitigation because claimant admittedly failed to make inquiry of the designated law enforcement officers concerning Leach's "record or reputation" for violation of State and Federal liquor laws, as required by 18 U.S.C.A. § 646. On appeal claimant challenges the sufficiency of the evidence to support the trial court's finding to the effect that the automobile involved was used to transport intoxicating liquor into Oklahoma, and in the alternative contends that Leach had no "liquor record or reputation" within the context and meaning of the statute.

---

[1] 18 U.S.C.A. § 646 pertinently provides: " * * * the court shall not allow the claim of any claimant for remission or mitigation * * * (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement * * * that such other person had no such record or reputation."

Leach was arrested on September 6, 1944, at the rear door of the Reeder Hotel in Tulsa, while engaged in unloading fifteen cases of whiskey, bearing Missouri revenue stamps, from the automobile involved here. In the automobile was found a 1944 Missouri automobile license plate. Leach pleaded guilty to a charge of illegal transportation, and in this proceedings the trial court took judicial knowledge of that plea in determining the related issue whether this automobile was used for such illegal transportation. Certainly the admission of the transporter is competent evidence of the illegal transportation. From this and other unexplained evidence and circumstances, the trial court was warranted in concluding that the automobile in question was used to unlawfully transport intoxicating liquor from the State of Missouri into the State of Oklahoma.

It was stipulated by the parties that the claimant held a valid chattel mortgage upon the automobile involved, and that James R. Leach, the mortgagor, did not have a "record" with any law enforcement agencies for violations of the liquor laws. However, the uncontroverted evidence shows that if the claimant had made inquiry at the Tulsa Police Department or the Alcohol Tax Unit at Tulsa, it would have been informed that Leach had a "reputation" with these officers for violating the liquor laws of the United States.

18 U.S.C.A. § 646 imposed upon the claimant the duty to make inquiry from designated law enforcement officers concerning Leach's "record or reputation" for violating the liquor laws, and the duty to make such inquiry is relieved only by the absence of a "record or reputation" with any of the designated officers or agencies in the event inquiry is not made. United States v. One 1939 Model De Soto Coupe, 10 Cir., 119 F.2d 516; United States v. McArthur, 5 Cir., 117 F.2d 343; Universal Credit Co. v. United States, 4 Cir., 111 F.2d 764; United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300; United States v. One 1938 Model Chevrolet Coach, 5 Cir., 106 F.2d 985. This rule was prompted by a purpose to provide a rule of thumb for the guidance of prospective purchasers of commercial paper on automobiles, and to afford a measure of protection against the uncertainties attendant upon the generality of reputation. Thus if, upon inquiry of any one of the designated officers, the prospective purchaser received an answer to the effect that the mortgagor had no "record or reputation" for violating the liquor laws, the inquiry is at an end, and the prospective purchaser is protected regardless of what others knew or thought about the mortgagor. If, however, no inquiry is made, as required by statute, the prospective purchaser is bound by whatever answer would have been given by any of the designated law enforcement officers had inquiry been made.

Apparently without contending against the efficacy of this rule, the appellant argues that "reputation" with the specified law enforcement officers, in its statutory sense, must be based upon facts known to them—not conjecture and surmise—and that a categorical statement by one of them to the effect that Leach had a reputation for violating the liquor laws would not justify the court in so finding.

While, as we have said, "reputation" in its statutory sense is confined to the opinion of the law enforcement officers designated in the statute (United States v. One 1939 Model De Soto Coupe, supra), there is nothing in the statute indicating an intention that their opinion shall be formed by any other means than those employed by his neighbors. Unfortunately, it is a truism that one's reputation is what others say about him, not necessarily what they know of him. See, Sloan v. United States, 8 Cir., 31 F.2d 902, 906; People v. McDaniel, 59 Cal.App.2d 672, 140 P.2d 88, 90; State v. Refsnes, 14 Wash.2d 569, 128 P.2d 773; Lutz v. State, 146 Tex.Cr.R. 503, 176 S.W.2d 317; State v. Pickett, 202 Iowa 1321, 210 N.W. 782, 783; State v. Fenimore, Del. 29 A.2d 170, 171; Bliss v. Johnson, 162 Mass. 323, 38 N.E. 446; Vol. 37 Words and Phrases, Permanent Ed., p. 72; 2 Bouvier's Law Dictionary, Rawle's 3d Rev., 2903.

In our case, the law enforcement officers who testified as to Leach's reputation for violating the liquor laws were rigidly cross-examined concerning the source of the information on which they based their opinion. A member of the Tulsa Police Department testified that Leach associated with men "that are known by our Department as dealing in liquor" and that he had a reputation as a "liquor runner". A member of the Alcohol Tax Unit at Tulsa testified that Leach had a reputation with his Department as a "liquor runner" and that such reputation had been established by reliable informa-

tion received from other officers. From these facts the trial court was justified in concluding that Leach had a "reputation" with the designated law enforcement officers for violating the liquor laws.

The judgment of the trial court is affirmed.