**UNITED STATES v. ONE HUDSON COUPE, 1938 MODEL, ENGINE NO. 8931838, N. C. LICENSE NO. 571–749 (1939), et al.**

No. 4579.

Circuit Court of Appeals, Fourth Circuit.

March 11, 1940.

Charles F. Rouse, Asst. U. S. Atty., of Kinston, N. C. (J. O. Carr, U. S. Atty., of Wilmington, N. C., and John H. Manning, Asst. U. S. Atty., of Raleigh, N. C., on the brief), for appellant.

John G. Mills, of Raleigh, N. C. (J. G. Mills, Jr., of Raleigh, N. C., on the brief), for appellees.

Before PARKER and DOBIE, Circuit Judges, and H. H. WATKINS, District Judge.

DOBIE, Circuit Judge.

A proceeding by the United States of America for the forfeiture of one Hudson Coupe, for violation of the internal revenue laws of the United States, 26 U.S.C.A. § 1441, 26 U.S.C.A. Int.Rev.Code, § 3321, was instituted in the United States District Court. Commercial Credit Company, claimant and appellee, (hereinafter called the claimant), filed an answer to the libel of information, asserting a lien upon the automobile, and seeking a remission or mitigation of the forfeiture. After a hearing without a jury upon oral testimony and affidavits, the District Judge ordered that the automobile be forfeited, but he allowed the Credit Company's claim and directed the return of the automobile to the claimant upon payment by it of the expenses incident to the seizure and forfeiture. From this judgment, the United States appeals.

The Government denies that the District Court had authority to remit or mitigate the forfeiture under Section 204(b) of the Repeal Enforcement Act, 27 U.S.C.A. § 40a(b); but concedes that the claimant did satisfy two of the conditions precedent to remission, viz., (1) that claimant had an interest as lienor in the Hudson Coupe, which interest it had acquired on good faith, and (2) that claimant had at no time prior to the seizure any knowledge or reason to believe that said automobile was being or would be used in violation of laws of the United States or of any state relating to liquor. But the Government strenuously insists that the claimant failed to comply with the third condition: (3) that claimant should have made proper inquiry of certain law enforcement officers, expressly designated in the statute, as to the buyer's record or reputation for violating liquor laws. Claimant contends that as the buyer had no such record or reputation, and the District Court so found, there was no legal duty resting upon it to make this inquiry.

The buyer of the Hudson Coupe, who was later apprehended in the unlawful removal of materials for distilled spirits, had purchased the automobile in 1938, and had given the dealer a promissory note secured by a conditional sale agreement. Thereafter this note and this agreement were duly assigned by the dealer to the claimant. Out of these transactions arose the claimant's lien upon the automobile when it was seized by the Government in 1939. At the time claimant purchased the note and conditional sale agreement, there appeared upon the back of the agreement a negative answer by the dealer to the printed question as to whether the dealer had reason to believe that the purchaser violated liquor laws. Claimant also received at this time a confidential report on the purchaser by the Hooper-Holmes Bureau. This report, as is quite typical of a credit rating, was principally concerned with the purchaser's occupation, financial responsibility and character, but it did contain a negative answer to the question as to whether the purchaser was identified with illicit liquor traffic. No other inquiries on this latter score were made by the claimant.

The purchaser of the automobile, Robert Lee, at the time of his transactions concerning the automobile, was a citizen of North Carolina and had resided in Johnston County for five years. Prior thereto, Lee had been a resident of Harnett County. It appears from the evidence that Lee had been twice convicted for violation of North Carolina liquor laws in the Recorder's Court of Harnett County, but that there was no record of this nature as to him

either in Sampson County, where Lee purchased the automobile, or in Johnston County, where he lived. Concerning the purchaser's reputation, the Government introduced five affidavits. In these, two police officers of Johnston County stated that for twelve months they had heard reports to the effect that Lee was engaged in the illegal liquor business; an Alcoholic Beverage Control officer of Johnston County and a sheriff and deputy sheriff of Harnett County stated that Lee had borne a reputation for several years for engaging in the illegal whiskey business. For the claimant, an attorney who resided in Johnston County testified that Lee's reputation was good, and that he had never heard of Lee's being connected with any illicit liquor traffic. It was this attorney who had signed the Hooper-Holmes confidential report, but it does not appear that either he or his secretary had at any time ever made any inquiry of a law enforcement officer concerning Lee's record or reputation for violating the laws relating to liquor.

■■ From our review of this record we conclude that the District Court had no authority to remit or mitigate the forfeiture under Section 204 of the Repeal Enforcement Act, 27 U.S.C.A. .40a. This section prescribes three conditions which must be precedent to any remission, and it should by now be an elementary proposition that subsection (d) of this statute grants to the trial court discretion to refuse or grant remission or mitigation only when the statutory conditions have been fulfilled. See C. I. T. Corp. v. United States, 4 Cir., 1937, 89 F.2d 977, 978. In the instant proceeding claimant did not prove it had complied with the third condition, specified in subsection (b) (3), which provides that if any person, whose rights are subject to the contract from which claimant's interest arises, has a record or reputation for violating state or federal liquor laws, then claimant must, before acquiring such interest, have been informed, in answer to his inquiry of a federal or principal local law enforcement officer, that such person has no such record or reputation. The failure of the Commercial Credit Company to make this necessary inquiry must cause the failure of its claim. Cf. United States v. Nat. Discount Corp., 7 Cir., 1939, 104 F.2d 611.

Subsection (b) (3) is predicated upon the recognition of the "bootleg" hazard as an element to be considered in investigating a person as a credit risk. See Senate Committee Hearings, 1935, Vol. 495, No. 4, p. 13; and House Reports, Vol. 4, 74th. Congress, 1st. Session, 1935, Report No. 1601, p. 6, where it was stated: "As a matter of sound business practice, automobile dealers, finance companies, and prospective lienholders on automobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This section merely requires that in the making of such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk." This Congressional intent to require courts to exact proof of inquiries was analyzed and approved by the Supreme Court in United States v. One 1936 Model Ford V-8 De Luxe Coach, 1939, 307 U.S. 219, 237, 59 S.Ct. 861, 83 L.Ed. 1249 (where it was held that a claimant had no duty to discover and then investigate somebody of whose existence he had no knowledge or suspicion). The proper places of inquiry are specifically designated in the alternative by this section; and therefore a claimant cannot rely simply upon the automobile dealer's reply to a printed question on a conditional sale agreement. An "automobile salesman is not likely to volunteer the information for his desire is to sell automobiles not to defeat sales." See dissent, United States v. One 1936 Model Ford V-8 De Luxe Coach, supra, 307 U.S. at page 240, 59 S.Ct. at page 871, 83 L.Ed. 1249.

■ The judgment of the trial court was predicated upon its finding "that said Robert Lee has no record or reputation for violating the laws of the United States or of any state relating to liquor". This finding of fact is, we think, untenable under the above interpretation of the meaning and intent of Section 204(b)(3). It is supported by the evidence only if record be construed to mean "record in the county of residence" or "record in a court of record", and if reputation is taken to mean not only a general reputation but one that is known by, or of which knowledge is imputable to, the claimant. As we cannot agree with either construction, the finding of fact appears unsupported by competent evidence; and in setting it aside, under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, we are constrained to consider it erroneous.

■ By record, we take it, the statute comprehends convictions for violations of

liquor laws. Such a record certainly was brought to the attention of the trial court in this proceeding. Counsel has urged upon us, by argument extentio ad absurdum, the harshness of any rule whereby the duty of inquiry is imposed upon a claimant because of a record existing at any place in the United States. However, in defining the term "record", as that term is used in the Remission Statute, we need only hold (as we do hold) that this term (for the purposes of this case) does at least cover a county in the same state adjacent to the county of residence of the owner of the automobile. Little is to be gained by attempting a nicety in the spatial element of a record, because of which the duty to inquire arises; the important thing is that finance companies should recognize the "bootleg hazard" and the risk of non-performance of their duty if, in fact, a record or reputation exists. The company is completely protected if it inquires at certain alternative headquarters, in the locality in which the buyer resides or in which the company is making inquiries as to character or financial standing, and is there informed that the buyer has no such record or reputation.

The same considerations should govern reputation, under this statute. Concerning the requisite generality of "reputation", as broadly defined, there is no question. See United States v. C. I. T. Corporation, 2 Cir., 1937, 93 F.2d 469, 471. However, it may be observed that there is a difference between a person's liquor-peddling reputation and his debt-paying and his church-going reputations, and these, we trust, will be generally known by different people. The statute, subsection (b) (3), requires that inquiry as to a person's liquor reputation be made of a specified group, who would be most likely to know it. The inquirer can then insist that he be informed of the general reputation and not of chance reports to the informant. We do not think it was the intendment of this subsection to impose the duty of inquiry only when the person's reputation for illicit dealing in unlawful liquor transactions had achieved such a notoriety that it was known or should have been known by the claimant and others in ordinary business transactions. If such a situation had existed, claimant would have been barred by subsection (b) (2). Obviously, subsection (b) (3) was directed to reach a different situation.

Quite keenly are we aware that the Remission Statute, as a remedial statute, should be given a liberal interpretation. We believe that the decisions of this court have fully and fairly reflected this policy. Congress has provided, quite wisely we think, that when the requisite conditions precedent have been duly met by a claimant, the whole question of remission is left (without restriction by any hard and fast rules, without even delimitation by predicable standards) to the sound discretion of the trial judge. But when these conditions precedent are rather clearly set out in the statute, and when (as here) a compliance with these conditions imposes little or no hardship on the claimant, we think there is no good reason for undue generosity in the construction and application of these conditions to instant situations. The number of automobiles sold on the installment plan is impressive, see United States v. One Terraplane Sedan, D.C., 1938, 23 F.Supp. 710, 712; but we fail to see how the financing of the purchase price can be unduly restricted by requiring credit rating agencies to make one more inquiry. On the other hand, if this inquiry is made, sales of automobiles to bootleggers will be thereby discouraged, and the necessity for proceedings such as the present one ought to be greatly lessened. Accordingly, we hold that in this case the claimant has failed utterly to meet one of these conditions precedent, that, consequently, there was no occasion or opportunity for any discretion in the trial judge and that the claimant's petition for remission should have been denied.

In the light of these observations, the judgment in favor of the claimant is reversed, and this case is remanded to the District Court, with directions to enter final judgment in favor of the United States.

Reversed.