**UNITED STATES of America,**
**Libellant,**

v.

**ONE 1959 BUICK 4-DOOR SEDAN,**
**Serial No. 7F3015958.**

**Civ. No. 7953.**

United States District Court
N. D. New York.

Oct. 31, 1960.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for libellant; Robert A. Contiguglia, Asst. U. S. Atty., of counsel.

Joseph Besch, Jr., Albany, N. Y., for claimant, General Motors Acceptance Corp.

JAMES T. FOLEY, District Judge.

This proceeding presents the construction of an unusual statute on forfeiture of automobiles involved in violation of the internal revenue laws, relating to liquors. I am frank to say after twelve years on the bench it is the first time the problem has reached the stage of contest, hearing and necessity for my analysis and judicial decision. My frankness must be extended to admit my experience as a District Judge, and general reading to keep reasonably informed, never brought me any awareness that such peculiar and admittedly harsh statute existed as Section 3617 U.S.C.A. 18, in reference to the remission or mitigation of such forefeitures. Much has been written on the subject. The landmark authority of the Supreme Court with elaborate review as to the legislative history and purpose of the statute while setting down the judicial guides for its application and interpretation recognized that the difficult phrasing of sub-section (b) (3) has produced divergent views concerning its meaning. United States v. One 1936 Model Ford V-8 De Luxe Coach, 1939, 307 U.S. 219, 224, 59 S.Ct. 861, 83 L.Ed. 1249. In this proceeding, we are mainly concerned with the terms of this same sub-section. There is also a substantial clash in the District Courts and several Courts of Appeals as to the mean-

ing and import of the term "reputation" in the subsection as it might affect the duty of inquiry by a finance company or automobile dealer to certain named officials at the risk of being barred from the benefits of remission or mitigation of forfeiture. A recent district court opinion canvasses the leading authorities with the two different schools of thought in this respect very satisfactorily. United States v. One 1958 Ford 4-Door Sedan, D.C.South Dakota S.D., 172 F.Supp. 313.

A hearing was held in this proceeding. The minutes of the testimony at my request were furnished to me by the attorney for the claimant and I shall return them to him. At the hearing four witnesses testified: the credit manager for General Motors Acceptance, an Albany City detective, a criminal investigator of the Alcohol & Tobacco Tax Division, Internal Revenue Service, Albany Office, and the Supervising Investigator of the same office. The testimony and exhibits are simple and uncomplicated, and the factual situation may be analyzed without difficulty. The government, as settled law imposes, conceded it had the burden to show that the purchaser of the Buick automobile, later convicted and sentenced by me for violation of the internal revenue liquor laws, had a record or reputation for violating the liquor laws of the United States or of any State before the GMAC effected and financed the assignment to it of the retail installment contract made by the purchaser with Capitol Buick of Albany. This type financing occurs, of course, thousands and thousands of times daily throughout the United States. This contract was dated May 1, 1959. (Ex. 1). At the time of the hearing the balance due on the contract was $3,243.28 and an appraisal not disputed by the government now places the value of the Buick at $1,950. (Ex. 2).

The testimony of the credit manager disclosed that GMAC, the Claimant, had financed the same type contract with the same purchaser in 1958 of another automobile for Capitol Buick. He told about checking with Capitol Buick at that time as to the purchaser and was informed that its experience with the purchaser was good and that the purchaser had also financed two cars with Commercial Credit, a large finance company. Another inquiry to Commercial Credit showed a good account, and a further check with the Merchants' Credit Bureau, a local credit agency of Albany, brought forth "no derogatory experience on the customer". The credit manager readily admitted he made no inquiry with the Chief of Police of Albany or the local investigators of the Alcohol and Tobacco Tax Division, Albany. He was impressively honest to state he knew of the statute, had made one check on a purchaser over a long period of years when there was suspicion of alcohol activity, but his reason in this instance for not inquiring was there was no intimation in the check that would create any suspicion of this sort.

The Albany Police detective told of his investigation and surveillance of the automobile purchaser over a period of time beginning in 1958, until the small, homemade still in the basement of a two-story family house in Albany was raided and the purchaser was arrested in September, 1959. The criminal investigators told of their similar surveillance and suspicion of the purchaser over this same period. Their investigation reports are in evidence, (Ex. A), and their most important feature, to me, is that by office memorandum dated March 3, 1959, it was stated that the LI (Liquor Investigation) should be closed at this time. It was explained that this statement meant only a temporary suspension of the investigation, or the closing out of the file on a temporary basis to be reopened at will. Another aspect of the investigator's testimony is the difference in the policy of handling inquiries concerning record or reputation if such had been made. Investigator Lucas, a man of many years in the Division, stated he would refer the call to the Supervisor in charge, Buffalo, N.Y. Supervisory Investigator Mealy testified he could have answered the inquiry by saying to the

inquirer: "Send your representative to my office"; or he could have referred him to the supervisor in charge in Buffalo.

The factual situation here has no great difference from the one passed upon by Judge Learned Hand, the most eminent jurist in this Circuit, in United States v. C. I. T. Corporation, 2 Cir., 93 F.2d 469, 470. This decision based upon similar facts cannot be disregarded by me and must be followed. Abbott v. United States, D.C., 61 F.Supp. 989; Moore Federal Practice, 2nd Ed. Vol. 1, pgs. 4059–4063. Judge Hand clearly establishes the principle to be applied with these words: "The notion seems to be that because the officials had been investigating Goldberg for a year, that gave him a reputation as a violator of the liquor laws. *That* is an *error*. The statute is drawn so as to impose upon the seller the duty of inquiry only when there exists something which is likely to reach his ears, a public record or a general reputation." United States v. C. I. T. Corp. supra, 93 F.2d at page 470; see also United States v. Shell, 4 Cir., 212 F.2d 789. It is admitted in this proceeding that the purchaser had no record for violating the liquor laws of the United States or any State before the install-ment contract was assigned.

I do not disagree at all with the reasoning and conclusion of Judge Hand. I find therein complete accord with the spirit and rule of reason laid down by the Supreme Court for the application of this harsh statute. These principles seem clearly stated to me, and guide the judicial discretion to govern the varying factual situations involved. These broad principles were stated therein, (United States v. One 1936 Model Ford V-8 De Luxe Coach, supra, 307 U.S. at page 226, 59 S.Ct. at page 865):

"Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law. * * * If any claimant has been negligent or in good conscience ought not be relieved, the court should deny his application. * * *"

"Subsection (b) (3) was intended to prevent remission to a claimant who had failed to inquire when he should have done so, to one chargeable with willful negligence or purpose of fraud." 307 U.S. at page 237, 59 S.Ct. at page 870.

Further, it is questionable under the facts here what an inquiry, if made, would have disclosed. Manufacturers Acceptance Corp. v. United States, 6 Cir., 193 F.2d 622, 624. The Albany detective said he would have only referred it to the Chief of Police, Albany, who had no report on the surveillance by the detective. The Albany federal investigators might have referred him to Buffalo, and the burden of inquiry would only entail Albany, because the contract was made here and the purchaser resided here. United States v. One 1935 Dodge, 2 Cir., 88 F.2d 613; United States v. One 1950 Model Buick, D.C., 137 F.Supp. 643. It would be difficult to assay the dilemma the Albany inquirer would be in as to compliance with the statute if the Albany investigator had informed him the investigation file was closed, even though temporarily, on March 3, 1959, approximately a month before the claimant financed the installment contract.

My findings are that the claimant made reasonable and adequate inquiry in good faith and in accordance with the law of this Circuit; there was no knowledge, reason or the slightest intimation obtained from a check of reliable, experienced credit sources that would give any indication of illegal liquor activity on the part of the purchaser involved; that the purchaser had no record of such federal or state conviction nor did he have a general reputation in the community as prescribed by the law of this Circuit that should put the claimant on notice; that the purchaser had a good work record as self-employed mason and previous employment with Magnus Metals; that it is not clearly shown by the government that a check with the local Albany officers described in the Statute would

have resulted in disclosure of reputation for illegal liquor activity other than mere suspicion and belief on the part of the officers.

My conclusions of law are that the government has not sustained its burden that the purchaser had a record or reputation under 18 U.S.C.A. § 3617(b) (3) that should bar the remission of forfeiture sought by the claimant; that there was no willful negligence or purpose of fraud on the part of the claimant in entering the installment contract with the purchaser; that the petition and claim for remission of forfeiture is granted and allowed for the return of the automobile in question to the GMAC.

A formal judgment directing remission of the forfeiture in accordance herewith shall be agreed upon and submitted, otherwise to be settled upon three days' notice.